IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RICKEY LETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:18-cv-810-WKW-GMB |
| ) | [WO] |
| BAYVIEW LOAN SERVICING, LLC, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to a United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law. Doc. 4. Plaintiff Rickey Lett asserts a breach of contract claim against Defendant Bayview Loan Servicing, LLC. Doc. 1. Pending before the court is Defendant's Motion to Dismiss. Doc. 6. After careful consideration of the parties' submissions, the applicable law, and the record as a whole, the undersigned Magistrate Judge RECOMMENDS that the Motion to Dismiss (Doc. 6) be GRANTED.

Additionally pending before the court are four Motions for Judgment on the Merits filed by Plaintiff. Docs. 15 & 17–19. The Magistrate Judge RECOMMENDS that those motions be DENIED.

**I. JURISDICTION AND VENUE**

The court has subject matter jurisdiction over the claims in this lawsuit pursuant to 28 U.S.C. § 1332. The parties do not contest personal jurisdiction or that venue is proper in the Middle District of Alabama. The court finds adequate allegations to support both.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Rickey Lett resides in Montgomery, Alabama. Doc. 1 at 1.  Bayview Loan Servicing, LLC (hereinafter Bayview) is located in Coral Gables, Florida. Doc. 1 at 1.  On January 18, 2006, Lett took out a mortgage from CitiFinancial Corporation LLC ("CitiFinancial"). Doc. 1 at 3.  The "Disclosure Statement, Note and Security Agreement" Lett signed set his annual percentage rate at 11.75%. Doc. 1 at 3.  In May 2017, Lett's mortgage account was transferred from CitiFinancial to Bayview. Doc. 1 at 3.  From May 3, 2017 until August 31, 2018 Bayview charged Lett monthly interest at the rate of 11.292%. Doc. 1 at 3.  This is 0.458% less than his stated annual percentage rate.

Lett alleges that Bayview owes him a duty to charge 11.75% interest each month, per the Disclosure Statement, Note and Security Agreement he signed with CitiFinancial in January 2006. Doc. 1 at 4.  As a result of Bayview's breach of duty, Lett was denied financial rights to a contractual agreement (the Disclosure Statement, Note and Security Agreement). Doc. 1 at 4.  Bayview deceived Lett by charging him 11.292% interest each month, as opposed to the agreed upon 11.75%. Doc.1 at 4.  Lett additionally alleges that he suffered a pattern of illegal extortion in his house payments from May 3, 2017 to August 31, 2018. Doc. 1 at 4.  Lett made all relevant payments in a timely manner, as required by his contract with Bayview. Doc. 1 at 4.  He claims that he suffered damages, loss of money, time, opportunity, and a host of other losses. Doc. 1 at 5.

## III.  STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "take the factual allegations in the complaint as true and

2

construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

In addition to the pleading requirements of *Twombly* and *Iqbal*, a plaintiff's *pro se* status must be considered when evaluating the sufficiency of a complaint.  "A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Yet any leniency cannot serve as a substitute for pleading a proper cause of action. *See Odion v. Google Inc.*, 628 F. App'x 635, 637 (11th Cir. 2015) (recognizing that although courts must show leniency to *pro se* litigants, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action") (internal quotation marks omitted).  "While the pleadings of *pro se* litigants are liberally construed, they must still

3

comply with procedural rules governing the proper form of pleadings." *Hopkins v. St. Lucie Cnty. Sch. Bd.*, 399 F. App'x 563, 565 (11th Cir. 2010) (internal citations and quotation marks omitted).

## IV.  DISCUSSION

### A.  Collateral Estoppel

Lett is collaterally estopped from litigating this action. "Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). The elements of collateral estoppel, or issue preclusion, are: "(1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior suit; (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding." *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1318. The decision to apply collateral estoppel is a matter for the trial court's discretion. *Matter of McWhorter*, 887 F.2d 1564, 1566 (11th Cir. 1989).

Collateral estoppel may be used offensively or defensively. *Shore*, 439 U.S. at 329. Offensive use of collateral estoppel occurs when a plaintiff tries to prevent a defendant from relitigating issues that the defendant previously litigated and lost against another plaintiff. *Id.* "Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely switching adversaries." *Id.* (internal quotation and citation

4

omitted). The defensive use of collateral estoppel "gives a plaintiff a strong incentive to join all potential defendants in the first action if possible." *Id.* at 329–30. Although defensive use of collateral estoppel is allowed, "it must still conform to the requirements of fairness." *Brewer v. Dupree*, 2003 WL 23507795, at *4 (M.D. Ala. Feb 12, 2003). "The most significant safeguard in applying estoppel is the requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate." *Id.* at *5 (internal quotation and citation omitted).

Here, the elements of collateral estoppel are satisfied. Two years ago, in *Lett v. Citifinancial Servicing, LLC*, 2017 WL 6816719 (M.D. Ala. Jan. 5, 2018), Lett filed a breach of contract claim against CitiFinancial for an alleged violation of his mortgage contract. *See* Doc. 29 at 2 (17-cv-336-MHT-TFM). Lett claimed that CitiFinancial charged him 11.292% interest instead of 11.75% interest, which violated a Disclosure Statement, Note and Security Agreement he signed with CitiFinancial on January 18, 2006. *See* Doc. 29 at 2 (17-cv-336-MHT-TFM). He alleged that from April 2013 through January 2017 CitiFinancial improperly charged him 11.292% interest on his monthly mortgage payments. Doc. 29 at 2 (17-cv-336-MHT-TFM). The Disclosure Statement, Note and Security Agreement specified an Annual Percentage Rate of 11.75%. Doc. 29 at 3 (17-cv-336-MHT-TFM). But his mortgage note specified that his interest rate would be 11.292% per year. *Lett*, 2017 WL 6816719, at *1. A magistrate judge of this court concluded that Lett's breach of contract claim failed without proof of damages since Lett was charged less than what he alleged he was due to be charged. *Id.* at *2. Accordingly, the magistrate judge

5

recommended that Lett's breach of contract claim be dismissed, and the district court adopted the recommendation and dismissed the action. *Lett*, 2018 WL 315256, at *2.

For purposes of collateral estoppel, the instant action and Lett's previous case are identical. Here, Lett's breach of contract claim arises from the exact same contract as before—the January 18, 2006 Disclosure Statement, Note and Security Agreement with CitiFinancial. Doc. 1-1 at 2. And his claim arises from the same issue—whether his loan service provider breached the contract by charging him monthly interest at the rate of 11.292% when the Disclosure Statement, Note and Security Agreement set his Annual Percentage Rate at 11.75%. While in the previous case Lett alleged that CitiFinancial charged him improper interest from April 2013 through January 2017, and here Lett alleges that Bayview charged him improper interest from May 2017 through August 2018, the issue at stake is identical to the one involved in the prior litigation.

Furthermore, that issue was actually litigated in the prior suit. Both parties fully briefed the issue of whether the Disclosure Statement, Note and Security Agreement was breached when Lett was charged 11.292% interest instead of 11.75% interest. The magistrate judge then issued a report and recommendation on the issue. Doc. 36 (17-cv-336-MHT-TFM). And then Lett had an opportunity to file objections in response, which he did. Doc. 38 (17-cv-336-MHT-TFM). He even filed an additional Motion for Judgment on the Merits. Doc. 27 (17-cv-336-MHT-TFM). The district judge then reviewed the record, considered all of the briefing, and evaluated the magistrate judge's report and recommendation before issuing a final judgment on the matter. Docs. 40 & 41 (17-cv-336-MHT-TFM).

The issue here also was a critical and necessary part of the prior action. The determination of whether the Disclosure Statement, Note and Security Agreement was breached when Lett was charged 11.75% interest instead of 11.292% was a vital part of Lett's prior case. As a matter of fact, that was the only issue before the court, and the court's ruling directly decided the issue. Docs. 36 & 40 (17-cv-336-MHT-TFM).

Lastly, Lett had a full and fair opportunity to litigate the issue in the earlier proceeding. Not only was he given the opportunity to brief his claim, but the magistrate judge referred his case to the Middle District of Alabama's Pro Se Assistance Program, through which a volunteer attorney helped Lett draft and file an amended complaint. Docs. 27 & 29 (17-cv-336-MHT-TFM). Both the magistrate judge and the district judge considered the merits of his claim before reaching a conclusion.

Lett was welcome to include Bayview as a party in the last action. He cannot now relitigate the identical issue merely by switching adversaries. Because Lett already litigated the issue of whether the Disclosure Statement, Note and Security Agreement was breached when he was charged 11.292% interest instead of 11.75% interest, and because he received a final judgment on this issue, the court recommends a finding that he is collaterally estopped from reasserting this identical breach of contract claim.

**B.     Breach of Contract**

Even if collateral estoppel does not apply in this case, the court finds that Lett failed to state a plausible claim for relief. To establish a breach of contract claim under Alabama

7

law,[1] "a plaintiff must allege: (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Sweetwater Investors, LLC v. Sweetwater Apartments Loan LLC*, 810 F. Supp. 2d 1288, 1294 (M.D. Ala. 2011). "A nonperformance must be material, which means that the nonperformance undermined the parties' objectives in making the contract." *Cole v. Owners Ins. Co.*, 326 F. Supp. 3d 1307, 1321 (N.D. Ala. 2018) (internal quotation and citation omitted). Nonperformance must be more than trivial; it must amount to a violation of the fundamental purpose of the contract. *ADTRAV Corp. v. Duluth Travel, Inc.*, 2018 WL 447417, at *8 (N.D. Ala. Jan. 17, 2018).

"In general, damages recoverable for breach of contract are those which result naturally and proximately from the breach, and such as the parties should have contemplated when the contract was made." *Moore v. Beneficial Nat. Bank USA*, 876 F. Supp. 1247, 1256 (M.D. Ala. 1995). "Damages for breach of contract are that sum which would place the injured party in the same condition he would have occupied if the contract had not been breached." *Sweetwater Investors, LLC*, 810 F. Supp. 2d at 1297. "Whatever the damages may be, the plaintiff has the burden of proving sufficient evidence of his loss to allow the factfinder to calculate the damages without operating from guesswork." *Moore*, 876 F. Supp. at 1257 (internal quotation and citation omitted). "Even if a plaintiff in a breach of contract suit cannot prove that she suffered actual damage as a result of

---

[1] Because a breach of contract claim is a question of substantive law, and not procedural law, federal courts apply the respective state's law. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (recognizing that "federal courts are to apply state substantive law and federal procedural law").

defendant's breach of contract, the plaintiff is entitled to nominal damages upon a showing that a valid contract existed and that defendant breached it." *Id.*

Here, Lett cannot establish Bayview's nonperformance. Lett pleaded that the Disclosure Statement, Note and Security Agreement set his Annual Percentage Rate at 11.75%. Doc. 1 at 3. And he alleged that Bayview improperly used an interest rate of 11.292% when it charged him the monthly mortgage payments. Doc. 1 at 3. But an annual percentage rate is not the same as a monthly interest rate. Thus, even though the Disclosure Statement, Note and Security Agreement does set the annual percentage rate at 11.75%, it does not obligate Bayview to charge Lett 11.75% interest on a monthly basis. Not only that, but in the Disclosure Statement, Note and Security Agreement, Lett agreed to pay 11.2920% interest per annum. Doc. 6-4 at 5.[2] Furthermore, the mortgage statements Lett attaches to his complaint indicate that the agreed-upon monthly interest rate with Bayview was 11.292%. Doc. 1-1. Because Lett's complaint does not plausibly allege that Bayview failed to perform under the Disclosure Statement, Note and Security Agreement, Lett has not pleaded a valid breach of contract claim. Accordingly, the court recommends that Lett's breach of contract claim be dismissed.

**C.     Motion for Judgment on the Merits**

Lett has filed four Motions for Judgment on the Merits. Docs. 15 & 17–19. In these motions, Lett asks the court to make a judgment on the merits based on evidence rather

---

[2] "[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

than technical or procedural grounds. He additionally asks that the court reject Defendant's Motion to Dismiss. For the reasons stated above, the court recommends that the motion to dismiss be granted. The court considered all of the parties' arguments, the evidence attached to Lett's complaint, and the applicable law. Accordingly, the court recommends that the Motions for Judgment on the Merits be denied as moot.

## V. CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that Defendants' Motion to Dismiss (Doc. 6) be GRANTED and that the Motions for Judgment on the Merits (Docs. 15 & 17–19) be DENIED as moot.

It is further ORDERED that Lett is DIRECTED to file any objections to the report and recommendation **no later than May 16, 2019**. Any objections filed must specifically identify the findings in the Magistrate Judge's report and recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. Agee is advised that this report and recommendation is not a final order of the court and, therefore, is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the report and recommendation and shall bar the party from attacking on appeal factual findings in the report and recommendation accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 2nd day of May, 2019.

/s/ Gray M. Borden
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE